BELICHICK, APPELLEE, *v.* BELICHICK, APPELLANT.

(No. 73 C. A. 30—Decided October 3, 1973.)

*Messrs. Pfau, Comstock & Springer,* for appellee.
*Mr. James L. Messenger,* for appellant.

DONOFRIO, J. This is an appeal from the Mahoning County Court of Common Pleas, division of domestic relations.

An order for temporary support and alimony was filed in the lower court, and during the course of the proceedings therein plaintiff, Mary Kate Belichick, appellee, made a number of requests for various personal books and records of defendant-appellant, Dr. Joseph Belichick, a dental surgeon.

The defendant has furnished plaintiff with such records as his income tax returns, record of appointments, cash journal and statement of accounts receivable, as well as all cancelled checks for the past three years.

Not satisfied with the records furnished, plaintiff filed a request for the production of certain documents, to-wit: "All patient cards and records pertaining to the defendant-appellant's practice of dentistry from the inception of said practice to the present date * * *."

Defendant filed a motion for a protective order to protect him from discovery of his patient cards and records

as they pertained to the diagnosis and prognosis and the fee charged therefor, claiming a privilege pursuant to R. C. 2317.02—pertaining to privileged communications and acts. In support of his motion, defendant filed an affidavit stating that the records requested are kept on single cards with the patient's complete medical history, diagnosis, prognosis, and the fee charged therefor.

The records in question are the patient cards containing not only the patient's dental record, but also the original record as to the work done, the amount billed, and whether the bill has been paid. In other words, these cards are the original raw source for determining the accuracy of defendant's statement as to his income. Plaintiff maintains that it is necessary to disclose this information for a fair and just determination of the action below.

The lower court overruled defendant's motion for a protective order and ordered defendant to comply with plaintiff's request for the production of documents. Defendant refused to produce these records and was found in contempt of court, from which finding defendant filed his notice of appeal.

Defendant assigns two errors, the first of which states:

"The Lower Court erred in not finding defendant doctor's patient records to be privileged communications and, therefore, not subject to discovery."

R. C. 2317.02 (A) (G. C. 11494) provides:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client; or a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient, but the attorney or physician may testify by express consent of the client or patient * * *."

The question before this court is simply whether or not dental surgeons or dentists can claim the umbrella of protection as a physician referred to in R. C. 2317.02 (A).

The traditional policy of the law is to require the disclosure of all information by those in possession of it, in order that the truth may be discovered and justice prevail. The granting of privileges against disclosure consti-

tutes an exception to this general rule, and the tendency of the courts is to construe such privileges strictly and to narrow their scope since they obstruct the discovery of the truth.

McCormick on Evidence, Section 72, page 152, states:

"They [privileges] do not in any wise aid the ascertainment of truth, but rather they shut out the light. Their sole warrant is the protection of interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice."

R. C. 2317.02 (A) is in derogation of the common law and must be strictly construed and consequently, the aforementioned section affords protection only to those relationships which are specifically named therein.

In *Weis* v. *Weis,* 147 Ohio St. 416, the fourth paragraph of the syllabus states:

"Section 11494, General Code [now R. C. Section 2317.-02 (A)], making privileged communications between certain persons, being in derogation of the common law, must be strictly construed, and consequently such section affords protection only to those relationships which are specifically named therein. The relationship of nurse and patient not being named in the statute, no privilege is extended to communications between a patient and his nurse."

There is no Ohio case directly in point that we can find or that has been brought to our attention. But there are many jurisdictions which have faced the "question and have determined that a dentist is not a physician within the meaning of privilege statutes.

In *People* v. *De France,* 104 Mich. 563, 62 N. W. 709, it was held that a dentist is not a physician or surgeon within the meaning of a statute providing that "* * * no person duly authorized to practice physic or surgery shall be allowed to disclose any information * * *." This Michigan case has been followed by other states in determining the same question.

In *Howe* v. *Regensburg,* 132 N. Y. S. 837 at 838, it was claimed that a dentist was within the privilege, but in answer to that contention the court said:

"At common law communications between physician

and patient were not legally privileged. * * * The legal privilege seems first to have been recognized in New York in 1828. * * * To the extent, therefore, to which the privilege can now be said to exist, it must find its support in some statutory enactment. Whatever may be urged for or against the existence of the privilege, we can see no good reason for extending it by implication or construction.''

Paragraph 2 of the headnotes in *Gulf, Mobile & N. R. Co.* v. *Willis*, 157 So. 899, states:

''Dentist is not a 'physician' within statute declaring as privileged all communications made to a physician by a patient or by one seeking professional advice.''

56 Ohio Jurisprudence 2d 658, Witnesses, Section 241, discusses the issue as follows:

''Statutes making communications between physician and patient privileged are usually considered to refer to medical practitioners, and only those whose business as a whole comes fairly within the definition of 'physician,' and who are duly authorized to pursue the practice of medicine and lawfully engaged in that vocation. An unlicensed practitioner is not a physician within the meaning of the statute, nor are orthopedists, *dentists,* druggists, or veterinarians.''

We find that the word ''physician'' as used in R. C. 2317.02 (A) is one who has been duly authorized and licensed by the state medical board to engage in the *general practice of medicine.* We do not find that a dentist or dental surgeon is engaged in the general practice of medicine. We hold that defendant does not fall within R. C. 2317.02, which grants a privilege from testifying. We, therefore, overrule defendant's first assignment of error.

Defendant's second assignment of error states:

''Plaintiff's request for production of documents is oppressive and an undue burden on defendant doctor, and the lower court erred in not permitting a protective order.''

Defendant claims that to produce the records would be burdensome and oppressive, and that the court erred in not permitting a protective order. We do not agree with this contention.

It will be feasible to review the financial aspect of the

defendant's records through a qualified and disinterested auditor in defendant's office under optimum conditions with the least amount of bother to defendant. This can be done by the trial court under Civ. R. 26 (C)(2).

We therefore overrule defendant's assignment of error number two. The judgment of the trial court is affirmed.

*Judgment affirmed.*

Lynch, P. J., concurs.

O'Neill, J., concurs in affirming the judgment of the lower court regarding a staying of proceedings.

O'Neill, J., concurring. I concur in affirming the judgment of the lower court in staying proceedings, however, for reasons different than set forth in the majority opinion.

This is an appeal from a finding of contempt by the lower court entered in the court's journal on May 10, 1973. This came about as a result of the defendant's disobedience of a court order entered in the court's journal on April 6, 1973, which order was never appealed. There is no doubt as to the defendant's refusal to obey and the lower court was justified, pursuant to Civ. R. 37(B)(2)(C), to stay further proceedings pending compliance. These are the only appealable facts before this court. The order of April 6th was obviously an order in a summary proceeding which affected a substantial right of the defendant. He chose not to appeal it, but rather to defy the lower court, knowing the potential outcome provided for in the Rules of Civil Procedure. This is not an orderly process and is not to be condoned. The proper and legal method is not to disobey, but rather to appeal. Accordingly, I would affirm the lower court's order as to the provisions of Civ. R. 37 (B)(2) (C), staying further proceedings, without any review of the order of April 6th.

The lower court also found defendant "in contempt." This apparently was done on the basis of Civ. R. 37 (B) (2)(d), which reads as follows:

"(d) In lieu of any of the foregoing orders or in ad-

dition thereto, an order treating as a contempt of court the failure to obey any orders * * *."

The failure to obey the court's order to produce records is an "indirect contempt."

"An indirect contempt is one committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice, and usually consists of a refusal to obey an order or writ of the court." 11 Ohio Jurisprudence 2d 93, Contempt, Section 4.

The court's finding of contempt was not followed by any punishment pursuant to statute. I therefore do not feel that it was a final appealable order subject to review.