KROMENACKER ET AL., APPELLANTS,
*v.* BLYSTONE, APPELLEE. ■

(No. L-87-093—Decided
December 31, 1987.)

*Alan L. Mollenkamp,* for appellants.

*Edwin A. Coy,* for appellee.

CONNORS, J.   This case arises from a jury verdict in favor of appellee, William J. Blystone, and arises from a personal injury claim brought in the Lucas County Court of Common Pleas by appellants, Jeffrey M. Kromenacker and Janet Kromenacker. Jeffrey M. Kromenacker (hereinafter referred to as "appellant") was injured in a motorcycle-automobile collision; he contends that the accident was solely and proximately caused by appellee's alleged negligence in failing to yield the right-of-way while making a left turn at an intersection.

Prior to trial, appellant filed a motion *in limine* to exclude from evidence at trial the results of a blood-alcohol test administered at the hospital where appellant was treated after the accident. In his motion, appellant asserted that the blood test results were privileged material pursuant to R.C. 2317.02(B). The court denied this motion; the results of the blood-alcohol test and expert testimony concerning these results were admitted into evidence. The jury returned a verdict for the appellee basing their decision on Ohio's comparative negligence statute, R.C. 2315.19.

In his timely appeal from the judgment below, appellant raises two assignments of error:

Assignment of Error I

"The trial court erred in admitting into evidence the results of a blood test conducted for medical treatment purposes as well as testimony relating to such test results for the reasons that such test results comprised privileged information and were not relevant to the issues presented in the case.

Assignment of Error II

"The jury verdict in the trial court was against the manifest weight of the evidence in that the evidence presented at trial clearly established that the sole and proximate cause of the accident in question was defendant's negligence in the failing to yield the

right-of-way to oncoming traffic before making a left-hand turn, in violation of statute."

In his first assignment of error appellant claims that the blood-alcohol test results are privileged information pursuant to R.C. 2317.02(B) which provided (see 138 Ohio Laws, Part I, 2489), as relevant herein:

"The following persons shall not testify in certain respects:

"* * *

"(B) A physician concerning a communication made to him by his patient in that relation * * * but the physician may testify by express consent of the patient * * * or if the patient voluntarily testifies the physician may be compelled to testify on the same subject * * *. The provisions of this division apply to doctors of medicine, doctors of osteopathic medicine, and doctors of podiatric medicine.'∎

In order for appellant to prevail on his first assignment of error, four criteria set forth in the statute itself must be satisfied. First, the blood-alcohol test results must be deemed to constitute a communication between the doctor and the patient. The Supreme Court of Ohio has held that physician-patient communications can be of two types—oral and written exchanges of information or physical examinations or observations. See *Baker* v. *Indus. Comm.* (1939), 135 Ohio St. 491, 496, 14 O.O. 392, 394, 21 N.E. 2d 593, 595. See, also, *State* v. *Dress* (1982), 10 Ohio App. 3d 258, 260-261, 10 OBR 372, 375, 461 N.E. 2d 1312, 1316.

Second, the communication must relate to the patient's medical treatment, diagnosis or advice. *Meier* v. *Peirano* (1945), 76 Ohio App. 9, 11, 31 O.O. 342, 344, 62 N.E. 2d 920, 922;

*Dress, supra,* at 261, 10 OBR at 375, 461 N.E. 2d at 1317.

Third, the privilege is applicable only if the individual communicating with the patient is a member of one of the three statutory categories—doctor of medicine, doctor of osteopathy, or doctor of podiatry. See *Weis* v. *Weis* (1947), 147 Ohio St. 416, 428-429, 34 O.O. 350, 355, 72 N.E. 2d 245, 252. See, also, *Belichick* v. *Belichick* (1973), 37 Ohio App. 2d 95, 98, 66 O.O. 2d 166, 168, 307 N.E. 2d 270, 272, citing 56 Ohio Jurisprudence 2d (1963) 658, Witnesses, Section 241.

Fourth, the patient must not have waived the privilege either by express consent or by voluntarily giving testimony as to the privileged communication. See *In re Loewenthal* (1956), 101 Ohio App. 355, 1 O.O. 2d 302, 134 N.E. 2d 158; *In re Roberto* (1958), 106 Ohio App. 303, 79 Ohio Law Abs. 1, 7 O.O. 2d 63, 151 N.E. 2d 37. In addition, the statute granting the physician-patient privilege is in derogation of the common law and is to be strictly construed against the party asserting it. *Weis, supra,* at 428-429, 34 O.O. at 355, 72 N.E. 2d at 252; *Belichick, supra,* at 97, 66 O.O. 2d at 168, 307 N.E. 2d at 271.

Appellant argues that the results of the blood-alcohol test were not admissible into evidence even though they were introduced and explained by a non-physician. That is, appellant claims that the privilege attaches to the information exchanged between the physician and patient. This information, according to appellant, then retains its privileged status until waived by the patient himself in a statutorily mandated method. This rationale is supported by Ohio case law.

A blood-alcohol test ordered by a patient's examining physician in order

to facilitate that patient's medical treatment or diagnosis is a "communication" per the statutory definition. See *Dress, supra,* at 260, 10 OBR at 375, 461 N.E. 2d at 1316. When the results of a medical test are subsequently entered into hospital records, such information, if privileged, retains that status. See *Weis, supra,* at 429, 34 O.O. at 356, 72 N.E. 2d at 252. See, also, *Heinemann* v. *Mitchell* (C.P. 1964), 8 Ohio Misc. 390, 391-392, 36 O.O. 2d 369, 370, 220 N.E. 2d 616, 617; *Pacheco* v. *Ortiz* (C.P. 1983), 11 Ohio Misc. 2d 1, 2, 11 OBR 43, 44, 463 N.E. 2d 670, 672. Only those portions of the hospital record considered nonprivileged can be entered into evidence. *Pacheco, supra,* at 2, 11 OBR at 44, 463 N.E. 2d at 672. Therefore, the fact that the foundational testimony concerning the blood-alcohol test results was presented by a toxicologist has no bearing on their privileged status. Once the requirements of R.C. 2317.02 (B) were met, only appellant could waive the privilege. *Id.*

Appellant further claims that there was no waiver of the privilege prior to trial. In Ohio, the mere filing of a personal injury suit or the production of documents does not effectuate a waiver of the physician-patient privilege. See *State, ex rel. Lambdin,* v. *Brenton* (1970), 21 Ohio St. 2d 21, 24, 50 O.O. 2d 44, 46, 254 N.E. 2d 681, 683; *State, ex rel. Floyd,* v. *Court of Common Pleas of Montgomery Cty.* (1978), 55 Ohio St. 2d 27, 28, 9 O.O. 3d 16, 17, 377 N.E. 2d 794, 795. See, also, Ohio Civ. R. 16(6). Only statutory methods of waiver by express consent or voluntary testimony are recognized. *Lambdin, supra,* at 24, 50 O.O. 2d at 46, 254 N.E. 2d at 683; *In re Loewenthal, supra,* at 358, 1 O.O. 2d at 303-304, 134 N.E. 2d at 160; *Dress, supra,* at 260, 10 OBR at 374, 461 N.E. 2d at 1316.

Appellant gave no express consent for the introduction of the blood-alcohol test results into evidence. Because there was no express waiver, appellant, as holder of the privilege, could waive this right only by voluntarily testifying as to the privileged matter by means of direct examination at deposition or trial. *In re Loewenthal, supra,* at 360-361, 1 O.O. 2d at 304-305, 134 N.E. 2d at 161-162; *In re Roberto, supra,* at 309, 79 Ohio Law Abs. at 5, 7 O.O. 2d at 67, 151 N.E. 2d at 41; *Covington* v. *Sawyer* (1983), 9 Ohio App. 3d 40, 46, 9 OBR 43, 48-49, 458 N.E. 2d 465, 471. Appellant testified in deposition as to his health and condition as well as to the blood-alcohol test results. He was deposed, however, as if on cross-examination by appellee and the privilege was not waived. *York* v. *Roberts* (C.P. 1983), 9 Ohio Misc. 2d 19, 20, 9 OBR 621, 621-622, 460 N.E. 2d 326, citing *Harpman* v. *Devine* (1937), 133 Ohio St. 1, 9 O.O. 347, 10 N.E. 2d 776.

Turning to the issue of whether the direct testimony of Dr. Marios Boucouras produced a waiver of the privilege as to the results of the blood-alcohol test, appellant implicitly states that testimony by one treating physician does not prevent assertion of the privilege as to a hospital record. The Ohio cases cited by appellee holding contrary to appellant's position can be distinguished from the present case because both are medical malpractice suits involving a plaintiff-patient suing one of his treating physicians but not the other. *Conti* v. *Lynn* (May 20, 1976), Franklin App. No. 75AP-591, unreported, and *Moore* v. *Grandview Hospital* (1986), 25 Ohio St. 3d 194, 25 OBR 259, 495 N.E. 2d 934. In *Moore,* the Supreme Court of Ohio held that a waiver by direct testimony of a treating physician could occur only in a medical malpractice suit against one or more physicians involved in the joint treatment of the same patient. *Moore,*

*supra,* at 197, 25 OBR at 261, 495 N.E. 2d at 936. Moreover, the court also stated in *Moore* that:

"* * * [W]here the physician-patient privilege * * * has not been waived, a non-party treating physician may testify as an expert witness provided that in answering the questions he disregards what he learned and observed while attending the patient and his own opinion formed therefrom." *Id.* at 198, 25 OBR at 262, 495 N.E. 2d at 937.

Even if it could be inferred that the resident physician who ordered the blood-alcohol test could testify as a result of the direct testimony of Dr. Boucouras, that resident could not testify as to the privileged information, *i.e.,* the results of the blood-alcohol test and his opinions based upon that test. In addition, the toxicologist called by appellee as an expert witness cannot be deemed a treating physician and could not fall within this exception.

It is important to recall in these arguments, debating whose testimony constituted a waiver, that, as previously discussed, the Ohio statute extending the privilege to the physician-patient relationship requires waiver by the holder of the privilege, *i.e.,* the patient, either by express consent or voluntary testimony. Accordingly, appellant's claim that the blood test results retain their privileged status despite the testimony of Dr. Boucouras is supported by case law.

A public policy argument has been offered by both parties to this suit. Appellant cites the Ohio Supreme Court decision in *State* v. *Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548, in stating the policy underlying the physician-patient privilege. Basically, the statute is designed to encourage a patient to fully disclose all of the information necessary for treatment no matter how embarrassing. *Antill, supra,* at 64-65, 26 O.O. 2d at

368, 197 N.E. 2d at 551. Admittedly, however, the courts have found that exceptions must be carved out to the general rule of privilege in cases of genuine public interest. For example, in Ohio, it has been held that the public interest in the deterrence of crime outweighs the benefits of the physician-patient privilege. *Dress, supra; State* v. *Tu* (1984), 17 Ohio App. 3d 159, 17 OBR 291, 478 N.E. 2d 830.

Appellant correctly contends that such balancing and the preclusion of the application of the privilege is limited to criminal prosecutions for drunk driving in the state of Ohio. See *Dress, supra; Tu, supra.* Appellant further claims that *Smolinski* v. *Crystal* (Apr. 2, 1987), Cuyahoga App. No. 51911, unreported, which supports the admission of blood-alcohol test results in civil negligence suits, is distinguishable from the case at bar. In this contention, appellant is also correct. In *Smolinski,* the blood-alcohol test was ordered by a police officer with the consent of the plaintiff for the purpose of a criminal investigation only. *Smolinski, supra,* at 4-6. Compare this to the present case where the test was ordered by a physician for the purpose of treatment or diagnosis. This court concludes that public policy in Ohio does not yet mandate that the physician-patient privilege be abridged in personal injury cases involving comparative negligence.

In addressing the relevance of the blood-alcohol test results to the issue of comparative negligence in this case, appellant avers that his intoxication, if any, is of no legal consequence because it was not the proximate cause of his injury. In his reasoning, appellant assumes that because the appellee violated municipal and state statutes in failing to yield the right-of-way, appellee is negligent as a matter of law. The principle of comparative negligence as delineated in R.C. 2315.19 is

applicable in all negligence actions tried after June 20, 1980. *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, 104, 6 OBR 162, 166, 451 N.E. 2d 1185, 1189. The blood-alcohol test results are relevant to the issue of appellant's comparative negligence and are admissible because they have the tendency to raise the probability that plaintiff's own actions were the proximate cause of his injury. Evid. R. 401. Even though the test results are probative in showing negligence on appellant's part, they are prejudicial to his case. However, such evidence can be excluded only if the unfair prejudice substantially outweighs its probative value. Evid. R. 403. In this instance, the results of the blood-alcohol tests are highly prejudicial to appellant's case because an inference of his own negligence as a causative factor to his injury can be made. Therefore, standing alone, the blood-alcohol test results and the related testimony of Dr. Forney should have been excluded on the basis of both privilege and prejudice. However, in light of the additional independent evidence introduced by the appellee, the admission of the testimony and blood-alcohol test results is harmless error. Civ. R. 61.

A finding that a trial court committed error does not of a necessity require reversal unless such error is prejudicial to the complaining party. *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159, 164-165, 17 O.O. 3d 98, 101, 407 N.E. 2d 490, 494, citing *Hallworth* v. *Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E. 2d 690. The error must affect substantial rights of the complaining party, or substantial justice must not have been done. Civ. R. 61; *O'Brien, supra; Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107, 111-112, 41 O.O. 2d 412, 414, 233 N.E. 2d 137, 140-141 (interpreting law analogous to Civ. R. 61).

Admission of the evidence in the case at bar did not cause the rendering of an improper judgment. If the evidence concerning the results of the blood-alcohol test were omitted from the record, there would remain sufficient competent evidence to support the jury verdict in favor of the appellee. The blood-test results and the testimony of the toxicologist which related to those results were "merely cumulative and corroborative of the testimony of other witnesses." *McQueen* v. *Goldey* (1984), 20 Ohio App. 3d 41, 44, 20 OBR 44, 47, 484 N.E. 2d 712, 716. Independent of the evidence pertinent to the blood-alcohol test results, the evidence adduced at trial on the subject of appellant's alcohol consumption included his own admissions and the corroborating testimony of his companion on the night of the accident. Both Kromenacker and his friend testified that they had consumed several beers shortly before the accident. Moreover, an unbiased witness testified as to the reckless manner in which Kromenacker was driving just prior to and up to the point of collision. This same witness also stated that he "smelled alcohol" on the appellant's breath at the scene of the accident.

For these reasons, we find that substantial justice has been done and that the trier of fact would have reached the same decision had this error not occurred. Hence, admission of the test results does not amount to reversible error. See *O'Brien, supra; Flesher, supra.* Accordingly, we find that appellant's first assignment of error is not well-taken.

Appellant's second assignment of error asserts that the jury verdict was against the manifest weight of the evidence presented at trial which clearly established that appellee's negligence was the sole and proximate cause of appellant's injuries. The law is clear in Ohio that upon appellate review of an issue involving manifest weight of the evidence:

"Judgments supported by some

competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus.

Further, the Supreme Court of Ohio has held that an appellate court must presume that the findings of the trier of fact are correct. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 79-80, 10 OBR 408, 410, 461 N.E. 2d 1273, 1276. Moreover, if more than one construction can be applied to the evidence, the reviewing court shall construe it most consistently and favorably with the verdict and judgment. *Id.*, citing 5 Ohio Jurisprudence 3d (1978) 191, 192, Appellate Review, Section 603.

In a case such as the matter *sub judice* where both parties have been found to be the proximate cause of an injury, it is of particular importance that the reviewing court follow the foregoing precepts established by the Supreme Court and give due deference to the findings of the trier of fact. *Rachow* v. *Shutters* (Jan. 30, 1987), Lucas App. No. L-86-210, unreported.

The thrust of appellant's argument is that evidence of violation of R.C. 4511.42 is sufficient to prove that appellee was the sole and proximate cause of the collision. Conversely, appellant also argues that no evidence was produced at trial to prove that he was, in any way, the cause of his own injuries.

Ohio, however, has adopted a comparative negligence statute which is clearly applicable in personal injury actions. *Wilfong, supra.* Therefore, the fact that appellee was cited for the violation of the motor vehicle code does not automatically establish him as being the sole cause of appellant's injuries, nor does it preclude competent evidence as to appellant's own negligence as a causal factor in the collision.

An examination of the record in the case before us discloses that competent testimonial evidence was received on an essential element of the case, that is, appellant's comparative negligence. An eyewitness, who was driving behind appellant's motorcycle prior to the accident, testified that appellant was driving in an erratic manner and that he accelerated to an excessive speed upon approaching the intersection. The investigating police officer testified that at the time of the collision, appellee's car was completely stopped and only three to four feet into the northbound lane of traffic and that the point of impact occurred in the left-hand turning lane. He further testified that in his opinion the motorcycle left the northbound lane and crossed over into the left-turning lane to strike appellee's car. Testimony was also elicited from several witnesses, including appellant, which revealed that appellant's driving capability was possibly impaired by the consumption of alcohol shortly before the accident occurred. Therefore, we hold that the jury verdict was supported by competent, credible evidence and that the judgment of the lower court was not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is found to be not well-taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellants pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and RESNICK, J., concur.